THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **INELL TUCKER, TANYA CRAFT, and** | * | |
| **CHUKYM TUCKER, individually and** | * | |
| **on behalf of, TERRY TUCKER (D)** | * | **CIVIL ACTION NO.:** |
| | * | |
| **Plaintiffs** | * | **SECTION:** |
| | * | |
| versus | * | |
| | * | **JUDGE:** |
| **UNITED STATES OF AMERICA** | * | |
| | * | **MAGISTRATE:** |
| **Defendant** | * | |
| | * | |

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

TO THE HONORABLE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF LOUISIANA AND THE JUDGES THEREOF:

## COMPLAINT

**NOW INTO COURT**, through undersigned counsel, come Plaintiffs, Inell Tucker, Tanya Craft, and Chukym Tucker, individually and on behalf of the decedent, Terry Tucker, who respectfully allege the following:

## I. PARTIES

1. Made Plaintiffs herein are:

    a. **INELL TUCKER**, a person of the full age of majority, who is the surviving spouse of the decedent, Terry Tucker, and who is domiciled in the Parish of Orleans, State of Louisiana;

    b. **TANYA CRAFT**, a person of the full age of majority, who is the surviving daughter of the decedent, Terry Tucker, and who is domiciled in Copiah County, State of Mississippi; and

    c. **CHUKYM TUCKER**, a person of the full age of majority, who is the surviving

daughter of the decedent, Terry Tucker, and who is domiciled in the Parish of Jefferson, State of Louisiana.

2. Made Defendant herein is the **United States of America**.

## II. JURISDICTION AND VENUE

3. The Court has federal question jurisdiction over this matter pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1346(b), as this lawsuit arises under the Federal Tort Claims Act, 28 U.S.C. §§ 2671, *et seq*. and involves a case in which the United States is a party-defendant. The Court has jurisdiction over any and all Louisiana state law claims asserted herein pursuant to 28 U.S.C. § 1367, as said state law claims form part of the same case or controversy under Article III of the United States Constitution.

4. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(2), for a substantial part of the events giving rise to this claim took place in New Orleans, Louisiana.

## III. FACTS

5. At all times pertinent herein, Defendant, the United States of America, operated a healthcare facility known as the Southeast Louisiana Veterans Healthcare Services ["SE Louisiana Veterans HCS"]. Defendant, in operating this medical center, obligated itself to veterans, including the decedent, Terry Tucker, to use that degree of care, skill, diligence, and attention used by similarly situated hospitals in the care and treatment of patients.

6. Upon information and belief, the SE Louisiana Veterans HCS operated by Defendant has, in its employ, doctors, nurses, interns, residents, student nurses, nurses' aides, and/or other hospital personnel, over which it exercises control and supervision, retaining the

right to employ and to discharge such employees.

7. On August 27, 2015, Mr. Terry Tucker presented to the Southeast Louisiana Veterans Health Care System [the VA Hospital] for a clinic visit with his primary care physician, Urszula Moroz, M.D.

8. On August 27, 2015, Mr. Tucker was complaining of weight loss and associated symptoms, which included constant dry mouth with difficulty swallowing (dysphagia) and decreased appetite. Dr. Moroz was notified, and an abdominal x-ray and chest x-ray were performed.

9. The abdominal x-ray revealed no acute abdominal pathology, but it was noted that if there was a concern for abdominal/pelvic malignancy, that cross-sectional imaging was recommended.  Likewise, the chest x-ray revealed no acute cardiopulmonary abnormality, but it was noted if there was any concern for pulmonary malignancy, a CT scan would be much more sensitive. Despite Mr. Tucker's worrisome clinical symptoms, no additional diagnostic testing was ordered or performed.

10. On September 9, 2015, Mr. Tucker again presented to the VA Hospital for a routine follow-up.  A systems review was performed, which revealed a twenty (20) pound weight loss in an eight (8) month period, hearing loss, tinnitus, and difficulty swallowing solids for the past three (3) months. Labs were ordered for Mr. Tucker's creatinine levels, sodium levels, white blood cell count, red blood cell count, hemoglobin levels, and hematocrit levels. Mr. Tucker's lab results were markedly abnormal, as follows: creatinine 2.1 (0.6-1.3); sodium 135 (136-144); white blood cells 4.0 (4.8-10.8); red blood cells 4.02 (4.5-6.1); and hemoglobin 11.6 (14-18); hematocrit 34.9 (42-52).

11. On September 11, 2015, Dr. Moroz documented that she called Mr. Tucker to discuss his

abnormal lab results, but that the call was picked up by an answering machine. She noted that a discrete message was left. On the same day, Dr. Moroz ordered a renal ultrasound, and Dr. Moroz noted that she was considering a Nephrology consult, as well as an abdominal CT scan without contrast.

12. On September 18, 2015, Dr. Moroz noted that she called Mr. Tucker and left a discrete message on the answering machine. Later that same day, Mr. Tucker called the clinic and requested a follow-up call from Dr. Moroz, reporting that he had in fact attempted to call Dr. Moroz the previous week, but that Dr. Moroz had been unavailable. Mr. Tucker also stated that he had been trying to contact Dr. Moroz ever since. A message was sent to Dr. Moroz to return Mr. Tucker's call.

13. On September 23, 2015, Mr. Tucker presented to the Emergency Room at Ochsner with complaints of difficulty digesting heavy food for the past couple of months. He described a sensation that felt like food was getting lodged in his throat. He stated that he would experience a choking feeling in his chest, and then could only eat soft food. Labs were taken, which revealed a white blood cell count of 2.64; red blood cell count of 3.92; hemoglobin of 10.9; and hematocrit of 33.4. A chest x-ray was ordered, which reported no acute process, no effusion, and no pulmonary edema. Mr. Tucker was instructed to return to the ER if he was unable to swallow liquids or if he experienced any fainting, difficulty breathing, severe pain, or other issues. He was also referred to a private-practice Gastroenterologist, Sarath Krishnan, M.D.

14. Two days later, on September 25, 2015, Mr. Tucker presented to Dr. Krishnan. After performing an assessment on Mr. Tucker, Dr. Krishnan's impression was early satiety, loss of weight, and hypertension. Dr. Krishnan's treatment plan and/or recommendations

consisted of an esophagogastroduodenoscopy and smart pill capsule (the doctor noted that if insurance did not approve the study, she would order a gastric emptying study); a CT of the abdomen and pelvis with and without contrast; a CT of the chest with contrast; labs; and a follow-up every 2 months.

15. On September 29, 2015, a CT of the chest with contrast revealed several pulmonary micronodules, the largest of which measured 4 mm. A CT of the abdomen and pelvis with and without contrast revealed prominent gas in the stomach and small bowel, but no evidence of obstruction, and several pulmonary micronodules, the largest of which measured 4 mm; subcentimeter liver hypodensity, too small to characterize; and a mildly enlarged prostate gland. The results of the September 29, 2015 CT scans indicated esophageal cancer.

16. On October 6, 2015, a complete kidney ultrasound revealed normal sonographic appearance of both kidneys, ruling out renal pathology.

17. On November 4, 2015, an esophagogastroduodenoscopy was performed, which revealed a mass in the middle third of the esophagus, and a biopsy was taken. Mr. Tucker was advised that he needed to undergo surgery and was referred to Dr. Nagarajan Chandrasekaran, a private-practice specialist in hematology/oncology, and to Dr. Jacob Daigle, a private practice general surgeon.

18. On November 13, 2015, Dr. Moroz of the VA noted that she had spoken with Mr. Tucker who reported that he was undergoing an EGD with a private practice doctor at Metropolitan Gastroenterology Associates. Dr. Moroz was also informed of the results of the EGD and that Mr. Tucker was advised that he needed surgery. A gastroenterology consult and non-VA general surgery consult were ordered.

19. On November 18, 2015, Dr. Moroz noted that she spoke with Mr. Tucker and his wife several times. Dr. Moroz recommended coordinating with Consult Management, RN to schedule a surgical consult. A surgery consult was subsequently scheduled with Ochsner for the following day, November 19, 2015; Mr. Tucker was evaluated by Dr. Daigle of surgery and Dr. Sekar of chemotherapy.

20. On November 20, 2015, Mr. Tucker saw Dr. Krishnan for a follow-up visit concerning his recent esophageal cancer diagnosis. Dr. Krishnan referred Mr. Tucker to Oncology and Dr. John Bolton at Ochsner for evaluation for surgery, and recommended a follow-up in two months or sooner.

21. On November 30, 2015, Mr. Tucker was evaluated by Dr. Bolton's Nurse Practitioner and a PET/CT was scheduled for December 3, 2015.

22. On December 2, 2015, Mr. Tucker presented to hematology/oncology at the VA Hospital for a consult concerning his newly diagnosed esophageal cancer, which had been diagnosed by a non-VA physician. At this visit, Mr. Tucker understood that if the particular treatment regimen was offered at the VA, then he would have to seek such treatment through the VA, and an alert was sent to the GI coordinator to obtain medical records from the non-VA Gastroenterologist, as well as Surgery/Oncology. A request for pathology and radiology was entered, and baseline laboratory studies were ordered.

23. On December 3, 2015, an NM PET Scan was performed at Ochsner, which revealed a hypermetabolic fungating soft tissue mass in the mid-esophagus compressing Mr. Tucker's known esophageal malignancy; metastatic disease of several mediastinal nodes and the left supraclavicular and upper abdominal nodes; and several bilateral subcentimeter pulmonary nodules. The study was similar to the previous examination and

was below the threshold for detectable FDG PET activity.

24. On December 8, 2015, Mrs. Tucker signed and mailed a release of medical information consent to the VA hospital.

25. On December 9, 2015, Mr. Tucker presented to West Jefferson Cancer Center on referral by Dr. Krishnan to be evaluated for treatment of moderately differentiated squamous cell carcinoma/malignant neoplasm of the middle third of the esophagus. Mr. and Mrs. Tucker indicated that they preferred neoadjuvant therapy first. The physician recommended concurrent chemoradiation with platinum plus%FU. It was noted that a port-a-cath needed to be placed by Dr. Daigle, and Mr. Tucker was referred to Dr. Raymond Gould for radiation evaluation.

26. On December 14, 2015, Mr. Tucker was evaluated by Dr. Gould. Dr. Gould's impression was stage IIIA, squamous cell carcinoma of the mid-esophagus. His recommendation and treatment plan was preoperative chemoradiation followed by surgery.

27. On December 15, 2015, Mr. Tucker was evaluated by Dr. Daigle for a port-a-cath placement. Mrs. Tucker updated Mr. Tucker's case manager at the VA Hospital regarding the recent consultations and developments in Mr. Tucker's treatment. She also indicated that she had completed the release of medical information consent that was mailed to her by the VA.

28. On December 17, 2015, Mr. Tucker was seen at the VA hospital for a follow-up visit. Mr. Tucker signed a release of information, and records were requested from Dr. Bolton, Dr. Seker, Dr. Daigle, and Dr. Gould. It was noted that a non-VA radiation therapy consult was pending. It was further noted that the VA hospital could provide chemotherapy if the patient desired.

29. On December 18, 2015, Mrs. Tucker reported to the VA hospital that Mr. Tucker wanted to continue his cancer care and treatment at West Jefferson and Ochsner, as he was already an established patient at those facilities. Mrs. Tucker was informed by the case manager that the VA offered chemotherapy, and that to have service at another facility would require formal approval.

30. On December 22, 2015, Mr. Tucker underwent a left subclavian port-a-cath placement performed by Dr. Daigle. Mrs. Tucker called the VA to report that the port-a-cath was inserted that day.

31. On December 29, 2015, Mr. Tucker was again seen at the VA for a follow-up visit. Mr. Tucker signed an informed consent for parenteral chemotherapy and was recommended for a consult with general surgery at the VA for a J-tube placement.

32. On January 4, 2016, Mr. Tucker was seen by Dr. Krishnan at a follow-up visit, who recommended a PEG placement within 1 week. On the same day, Mrs. Tucker followed-up with the VA on her husband's general surgery consult and reported that no one from the "Choice First" program had ever contacted them regarding the coordination of the consult for a PEG placement that had been recommended on December 29th. Mrs. Tucker called the VA and reported that the PEG was to be placed on January 15, 2016.

33. On January 8, 2016, a non-VA consult was completed for general surgery.

34. On January 12, 2016, it was noted that Mr. Tucker was approved for treatment at West Jefferson, where a feeding tube placement was scheduled for January 15, 2016. Radiation treatments were scheduled to begin on January 19, 2016. The PEG tube placement was unsuccessful.

35. On January 28, 2016, Mr. Tucker presented to the VA Hospital for his initial

chemotherapy consult; radiation had been started one week prior.

36. Mr. Tucker continued his concurrent chemotherapy and radiation treatment through early March of 2016.

37. On March 4, 2016, the day after completion of his therapy, Mr. Terry Tucker tragically died.

38. As set forth above, no diagnostic testing was done by the VA in August of 2015, even though Mr. Tucker was noted to have a significant weight loss of over twenty pounds, in addition to dysphagia. Moreover, even after Mr. Tucker's cancer was diagnosed firmly in September of 2015, the VA unreasonably delayed his treatment for over four months.

## IV. MEDICAL MALPRACTICE PURSUANT TO THE FEDERAL TORT CLAIMS ACT

39. Mr. Tucker's healthcare providers at SE Louisiana Veterans HCS, its officers, agents, and/or employees, and those for whom it is legally responsible, breached the standard of care, causing Mr. Tucker to suffer injuries, damages, and/or death. Accordingly, Defendant, the United States of America, is liable to Plaintiffs for medical malpractice under the Federal Tort Claims Act.

40. Defendant's breaches of the standard of care include, but are not limited to, the following:

    a. Failure to timely diagnose Mr. Tucker's squamous cell carcinoma of the esophagus; and/or

    b. Negligently delaying treatment of Mr. Tucker's condition following diagnosis of that condition.

41. Plaintiffs, Inell Tucker, Tanya Craft, and Chukym Tucker, timely filed an administrative

claim pursuant to the Federal Tort Claims Act on April 6, 2017, which was acknowledged on April 24, 2017.

42. On March 20, 2018, the Department of Veterans Affairs denied the Tucker Family's FTCA claim.

## V. DAMAGES

43. Prior to his death, the decedent, Terry Tucker, suffered the following non-exclusive injuries and damages, as a direct and/or proximate result of Defendant's negligence, for which his surviving statutory beneficiaries are entitled to recover as a matter of law:

    a. Past physical pain and suffering;

    b. Keen mental anguish;

    c. Emotional distress;

    d. Past medical expenses;

    e. Nervousness, depression, and/or anxiety;

    f. Loss of the chance to survive; and/or

    g. Any and all other damages as are reasonable in the premises.

44. As a result of Terry Tucker's untimely death, his statutory beneficiaries, Inell Tucker, Tanya Craft, and Chukym Tucker, have suffered the following non-exclusive injuries and damages, as a direct and/or proximate result of Defendant's negligence:

    a. Past physical pain and suffering;

    b. Fear;

    c. Mental anguish;

    d. Emotional distress;

    e. Loss of love, society, and affection;

  f. Loss of support;

  g. Loss of enjoyment of life; and

  h. Funeral and burial expenses.

### VII.  PRAYER

**WHEREFORE**, Plaintiffs, Inell Tucker, Tanya Craft, and Chukym Tucker, individually and on behalf of the decedent, Terry Tucker, pray that after due proceedings had, there be judgment rendered in their favor and against Defendant, and that they be awarded damages, in addition to judicial interest from the date of the filing of their administrative claim until paid, plus all costs of these proceedings, and for all general and equitable relief allowable under the law.

        Respectfully submitted,
        **KARA HADICAN SAMUELS & ASSOCIATES, LLC**

      By: */s/ Kara Hadican Samuels*
        Kara Hadican Samuels (# 29234) (T.A.)
        Tiffany A. Morales (#36594)
        4004 Canal Street
        New Orleans, Louisiana  70119
        Telephone:  (504) 558-9478
        Facsimile: (504) 558-9482
        kara@karasamuels.com
        tiffany@karasamuels.com
        *Attorneys for Plaintiffs*

**PLEASE SERVE:**

United State of America
Through the Honorable David J. Shulkin
Secretary of the Department of Veterans Affairs
810 Vermont Avenue N.W.
Washington, DC 20420

     *SERVICE INSRTUCTIONS CONTINUED ON NEXT PAGE*

United States of America
Through U.S. Attorney General Jeff Sessions
Department of Justice
950 Pennsylvania Avenue, N.W.
Washington, DC 20530

United States of America
Through the U.S. Attorney for the Eastern District of Louisiana
The Honorable Kenneth A. Polite
210 Hale Boggs Federal Building
500 Poydras Street
New Orleans, LA 70130

United States of America
Through Department of Regional Affairs
c/o Charles Caine
Office of Regional Counsel
1515 Poydras Street, Room 702
New Orleans LA, 70112